IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRATERNAL ORDER OF POLICE METRO
TRANSIT POLICE LABOR COMMITTEE, INC.,
    Plaintiff,

v.                                        Civil Action No. 1:17cv644

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY (WMATA),
    Defendant.

## MEMORANDUM OPINION

This breach of contract case arises from a labor dispute between an employer, Washington Metropolitan Area Transit Authority ("WMATA"), on the one hand, and on the other hand, a WMATA employee, Officer Mark Millhouse ("Officer Millhouse"), and his union, the Fraternal Order of Police Metro Transit Labor Committee, Inc. ("Union"). When Officer Millhouse failed to receive a K-9 officer position to which he felt entitled under the terms of the Collective Bargaining Agreement ("CBA"), the Union, on his behalf, initiated a grievance pursuant to the CBA. In the course of pursuing this labor grievance, the Union and WMATA resolved the dispute by entering into a settlement agreement on October 11, 2016 (hereinafter, "Settlement Agreement"). This lamentably did not end the dispute, as the parties then fell to fighting over the meaning and application of the Settlement Agreement, which led the Union to file its one-count complaint for breach of contract. WMATA, in turn, filed a motion to dismiss which presents the question whether the parties' dispute over the meaning and application of the settlement

agreement may be litigated in this forum as a state law breach of contract claim or whether this action is a labor dispute that must be resolved by arbitration as set forth in the CBA and the WMATA Interstate Compact ("Compact").

For the reasons that follow, the parties' dispute must be arbitrated.

## I.

### A.

Before reciting the facts or addressing the issues presented by the motion to dismiss, it is important to describe the parties and to understand the context in which this labor dispute arises.

Plaintiff, WMATA, is an interstate agency formed by a Compact between three jurisdictions, the District of Columbia, Maryland and Virginia, for the purpose of operating Metrorail and Metrobus systems in those jurisdictions. *See Fraternal Order of Police Metro Transit Police Labor Comm., Inc. v. Washington Metro. Area Transit Auth.*, 780 F.3d 238, 239 (4th Cir. 2015) (reciting the history and purpose of the Compact and the role of WMATA in administering the Metrosystem). The Compact authorizes WMATA to employ a police force, the Metro Transit Police Department ("MTPD"), whose officers have the authority to enforce the laws of the three jurisdictions on the Metrosystem. Officer Millhouse is employed directly by MTPD and by extension WMATA. The Union, the defendant in this matter, is the bargaining agent for MTPD officers, including Officer Millhouse, and is also a party to the CBA with WMATA.

It is also important as a preface to describing the specific facts of this case to identify certain provisions of the Compact and CBA that play a role in the disposition of

this matter. To begin with, Article XIV, Section 66 of the Compact, which governs the relationship between WMATA and its employees, mandates that any labor dispute involving the meaning or application of the CBA shall be resolved by arbitration.[1] The Compact also provides in Article XVI, Section 80, in part, that: "The authority shall be liable for its contracts and for its torts . . . in accordance with the law of the applicable Signatory (including rules on conflict of laws). . . ." *Id.* at Art. XVI, § 80. And finally, Article XIV, Section 81 of the Compact, in conjunction with the enabling statute passed by Congress,[2] provides that United States District Courts shall have jurisdiction over "all actions brought by or against the Authority. . . ." *Id.* at § 81.

The CBA entered into by WMATA and the Union (on behalf of MTPD officers) also contains provisions relevant to these proceedings. Specifically, Article 6 of the CBA sets forth the manner in which WMATA must fill vacancies within MTPD, a sub-unit of

---

[1] Article XIV, Section 66 specifically provides:

> In a case of any labor dispute involving the Authority and such employees where collective bargaining does not result in agreement, *the Authority shall submit such dispute to arbitration. . . . The term "labor dispute" shall be broadly construed and shall include* any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including *any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.*

WMATA Compact Art. XIV, § 66(b) – (c) (2010) (emphasis added).

[2] *See* Pub. L. No. 89–774, 80 Stat. 1324 (1966).

WMATA, including inter-departmental transfers.[3] WMATA and Fraternal Order of Police/Metro Transit Police Labor Committee Inc. Collective Bargaining Agreement, Article 6 (October 2010). Additionally, Article 9 of the CBA sets forth the grievance procedure that governs any "dispute between the Authority and the Union concerning the meaning, interpretation and/or application of [the CBA]." *Id.*, Article 9. Specifically, Article 9 sets forth a five-step grievance procedure with the final step being arbitration or appeal to a trial board. *Id.*

Given this context, it is now appropriate to recite the pertinent facts.

### B.

For the purposes of WMATA's motion to dismiss, the material facts set forth in the Union's complaint must be accepted as true and are as follows:[4]

- Officer Millhouse, who is represented by the Union, has been continuously employed as a MTPD officer since May 4, 2004.

---

[3] Article 6 provides, in relevant part:

> If the Authority decides to fill bargaining unit positions which have been rendered vacant by resignation, death, retirement or removal of previous incumbent, or if additional jobs are newly created, a notice of such vacancy shall be posted for seven (7) days. The Authority's Office of MTPD shall first consider all requests for transfers to that position, if any. In the event that two (2) or more employees who have requested such transfer are equally qualified for the position, the employee with the greatest seniority, as defined in Article 5, Section 1, shall receive the transfer.

Collective Bargaining Agreement, *supra*, Article 6.

[4] The facts stated herein are appropriately derived from plaintiff's complaint and the documents attached and incorporated into the complaint. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (holding district court must take as true the facts alleged in the complaint when the defendant poses a facial challenge to subject matter jurisdiction).

4

- On July 10, 2014, WMATA (through its sub-unit MTPD) issued a vacancy announcement for a position as a K-9 officer.

- Officer Millhouse applied for the K-9 officer position and on July 28, 2014, WMATA issued a memorandum stating that Officer Millhouse was eligible and ranked fourth on the list of potential candidates (presumably based on seniority).

- After this memorandum issued Officer Millhouse was suspended for one day in late 2014 for allegedly failing to report a traffic accident.

- On March 2, 2015, WMATA notified Officer Millhouse that he was no longer eligible for the position of K-9 officer given his 2014 disciplinary action.

- Thereafter, Officer Millhouse was disciplined on two other occasions: first, on April 4, 2016, Officer Millhouse received a two day suspension for purportedly improperly ejecting a round of ammunition from his service firearm; and second, on May 16, 2016, Officer Millhouse received a three day suspension for allegedly participating in a pattern of attending court proceedings unnecessarily.

- The Union, utilizing the CBA's grievance procedures, filed four grievances on behalf of Officer Millhouse: the first three related to Officer Millhouse's disciplinary sanctions[5] and the fourth related to WMATA's March 2, 2015 determination that Officer Millhouse was no longer eligible for a K-9 handler vacancy.

- On October 11, 2016, WMATA and the Union entered into the Settlement Agreement resolving the Union's fourth grievance, specifically whether Officer Millhouse would be eligible to serve as a K-9 officer.

- The Settlement Agreement provides that :

    Officer Millhouse will be appointed to the next EOD K-9 opening if Officer Millhouse meets the following requirements:

    (1) Officer Millhouse must for a period of 8 consecutive months of active duty remain free of a

---

[5] The plaintiff's Complaint does not address whether or how these three grievances were resolved, but it does appear that these disciplinary actions remain a part of Officer Millhouse's employment record.

5

disciplinary action. This period will be measured from the effective date of the disciplinary action;

(2) Officer Millhouse must achieve 8 consecutive months of active duty service without a disciplinary action no later than March 31, 2017. If Officer Millhouse is unable to achieve 8 consecutive months by March 31, 2017, he may still qualify for an appointment to the K-9 unit, but he must do so from the next list of qualified applicant; and

(3) Officer Millhouse must remain otherwise qualified for an appointment to the K-9 [unit] by maintaining all other qualifications/certifications required of the position.

(Settlement Agreement, Doc. 1-6.)

- In April 2017, six months after the parties entered into the Settlement Agreement, WMATA announced its intention to create at least one additional K-9 unit officer position.

- Shortly thereafter, the Union reminded WMATA of its obligation under the Settlement Agreement to appoint Officer Millhouse to that K-9 officer vacancy.

- In response, WMATA informed the Union that it believed it had no obligation to assign Officer Millhouse to the K-9 unit vacancy because he had not yet completed eight (8) consecutive months of service without any disciplinary action.

- Specifically, WMATA stated that as a result of Officer Millhouse's previous disciplinary actions he was required to complete a "Performance Improvement Plan" ("PIP"), between May 4, 2016 and August 4, 2016; and therefore, he was ineligible to receive a priority appointment to the K-9 unit opening before April 4, 2017.[6]

- WMATA's construction of the Settlement Agreement and unfavorable response led to the Union's filing of this lawsuit, alleging that WMATA's refusal to assign Officer Millhouse to the K-9 unit vacancy was a breach the Settlement Agreement.

---

[6] Officer Millhouse completed his PIP satisfactorily.

6

On June 29, 2017, WMATA filed its motion to dismiss the Union's single-count complaint for breach of contract, arguing that federal subject matter jurisdiction is lacking because the Compact mandates arbitration of labor disputes like the one presented here. *See* WMATA's Mem. Supp. Mot. Dismiss (Doc. 9). In support of its position, WMATA relies chiefly on the Fourth Circuit's recent decision in *Fraternal Order*, 780 F.3d at 238. By contrast, the Union asserts that *Fraternal Order* is distinguishable from this case, because the Settlement Agreement settled a labor grievance and is as enforceable as an arbitration decision, the culmination of the grievance process. *See* Union's Mem. Opp. Mot. Dismiss (Doc. 11).

## II.

Because WMATA asserts arbitration is mandatory, it seeks dismissal of the Union's complaint for lack of subject matter jurisdiction. A defendant may challenge subject matter jurisdiction in two ways: facially or factually. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A defendant mounts a facial attack when it contends "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."[7] *Id.* Here, WMATA raises a facial challenge to subject matter jurisdiction and therefore, "the [Union] [] is afforded the same procedural protection as [it] would receive under [] Rule 12(b)(6). . . ." *Id.* Thus, the question is whether the Union's well-pleaded factual allegations give rise to jurisdiction permitting litigation of its breach of contract claim in this forum, or instead whether the parties' dispute must be submitted to arbitration.

---

[7] A defendant factually attacks the jurisdictional allegations in a complaint when it claims they "[are] not true." *Kerns*, 585 F.3d at 192.

## III.

Although there is no Fourth Circuit decision precisely on point, there is authority in this circuit and elsewhere that points persuasively to the conclusion that the Union must arbitrate the parties' dispute over the collectively-bargained Settlement Agreement. [8]

This result follows from recognition that the Union's action is not a state law claim governed by Article 80 of the Compact,[9] but rather arises under § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a). Because agreements like the Settlement Agreement relate to or arise from the CBA, they are labor agreements within the meaning of § 301 of the LMRA. Thus, where, as here, the substance of a breach of contract claim is "inextricably intertwined" with a collectively-bargained labor contract, the common law claim is completely preempted by § 301. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Given this, a dispute over an agreement settling a grievance that implicates a CBA is a labor dispute controlled

---

[8] The Fourth Circuit has concluded that initial labor disputes must be arbitrated, *see, e.g., Fraternal Order*, 780 F.3d at 238; *Freeman v. Duke Power Co.*, 114 F. App'x 526, 531 (4th Cir. 2004); *Davis v. Bell Atlantic–W.V., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997), but it does not appear that any court in this circuit has addressed whether a breach of a settlement agreement entered into in the course of the grievance process must also be arbitrated. Although the Fourth Circuit has only ruled that initial labor disputes must be arbitrated, courts in other circuits have addressed the issue presented here: whether disputes over a collectively bargained settlement agreement must be arbitrated. *Cf. Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1080 (9th Cir. 2002) (overruled in part on other grounds) ("We hold that disputes arising under a side agreement [including a settlement agreement] must be arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration clause."); *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987) ("We conclude that a settlement agreement [resolving a grievance arising out of a labor relationship governed by a CBA] is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated."). Admittedly, though, these cases do not involve an interstate compact or the particular collective bargaining agreement in dispute in this case.

[9] To be sure, Article 80 applies or operates when WMATA sues or is sued by passengers, suppliers, contractors or others; but as here, it does not apply where the parties dispute a labor agreement under the CBA.

8

entirely by federal law.

The Fourth Circuit recently had occasion to reaffirm this principle in *Freeman v. Duke Power Co.* See 114 F. App'x 526, 528 (4th Cir. 2004) (citing *Davis v. Bell Atlantic–W.V., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997)).[10] In *Freeman*, the Fourth Circuit addressed whether an agreement settling a labor dispute governed by a CBA is, in and of itself, a labor contract within the meaning of § 301 of the LMRA. *Id.* The *Freeman* court specifically held that:

> Settlements of employee grievances that are entered pursuant to the terms of a CBA are labor contracts within the meaning of § 301, which preempts an alleged breach of the Union-negotiated agreement that settled an employee grievance.

*Id.* at 531.[11] Therefore, it is beyond dispute that the Union's claim for breach of the Settlement Agreement is completely preempted and must be treated as a § 301 claim.

In this case, the operation of the complete preemption doctrine means that the parties' dispute over the construction and application of the Settlement Agreement is governed by federal law, not state contract law, and that the provisions of the CBA and

---

[10] Settlement agreements arising out of labor disputes governed by a CBA have been treated similarly by other courts. *See, e.g., Jones v. Gen. Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991) ("Settlement agreement [resolving grievance under the CBA] is a creature wholly begotten by the CBA."); *Duerr v. Minnesota Min. & Mfg. Co.*, 101 F. Supp. 2d 1057, 1063 (N.D. Ill. 2000) (dismissing plaintiff's breach of contract claim for failure to exhaust the CBA's grievance procedures because "the Settlement Agreement itself was based on an interpretation of the CBA; thus, any further interpretation of the Settlement Agreement may rely on the underlying CBA.")

[11] *See also Williams v. Amalgamated Transit Union Local 689*, No. 15-CV-596 (TSC), 2017 WL 1185173, at *3 (D.D.C. Mar. 29, 2017) ("The Supreme Court "has held that 'when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.'" (quoting *Allis–Chalmers Corp*, 471 U.S. at 220).

Compact are dispositive. Both documents mandate arbitration. The CBA provides that any dispute "between the Authority and the Union concerning the meaning, interpretation and/or application of the [CBA]" must go through the grievance process, which ultimately results in arbitration. *See* CBA, Article 9; *see also, id.*, Article 10 ("The Union or the Authority may invoke arbitration. . . ."). Similarly, Article XIV, § 66 of the Compact provides that any labor dispute relating to "the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation" shall be submitted to arbitration. WMATA Compact Art. XIV, § 66(b) – (c). As the Fourth Circuit has recognized in *Fraternal Order*, "[t]he WMATA Compact is clear that arbitration is the appropriate method for resolving any 'labor dispute.'" 780 F.3d at 244. The parties' dispute over the meaning and application of the Settlement Agreement is clearly a "labor dispute"; it is a labor dispute that implicates the interpretation and application of the CBA, and as such, is subject to Article XIV, § 66 of the Compact and Article 9 of the CBA – both of which mandate arbitration.

The Union's argument that this result will discourage parties from settling disputes at the early stages of the grievance process is unpersuasive. No perverse incentives are occasioned by the result reached here.[12] The CBA and the Compact sensibly contemplate

---

[12] In fact, this result is the only way to give meaning the purpose of the Compact's mandatory arbitration provision. If the Union's position prevailed and parties were allowed to gain access to federal courts by settling at steps 1–4 of the grievance process, the parties could consistently, through manipulation of the process, short-circuit the CBA's grievance procedures, and more importantly, could eviscerate the provision in the Compact that mandates arbitration of labor disputes.

arbitration as the exclusive means of resolving labor disputes, as opposed to litigation in federal court, because labor disputes should be resolved expeditiously and fairly to provide certainty to the employer and employee and avoid unnecessary costs. Thus, parties whose disputes implicate the CBA and Compact cannot avoid arbitration through settlement; but they can avoid the costs and time associated with completing steps 1–4 of the grievance process by settling early. Parties will always have an incentive to settle at the earliest stages of the grievance process, if they can do so in good faith, to resolve the matter at the least cost. But this reasonable incentive to settle disputes in their infancy does not allow the parties to escape arbitration in the event they subsequently dispute the agreement. This is so because the CBA and Compact mandate arbitration, and thus, the Union's claim must be arbitrated.

It is important to note that the issue before the arbitrator is not the initial dispute between WMATA and the Union over whether Officer Millhouse should have received the K-9 vacancy pursuant to Article 6 of the CBA, but instead is the dispute over the construction and application of the Settlement Agreement between WMATA and the Union.[13] Importantly, the result reached here does not require the parties to return to square one of the grievance procedure. To hold otherwise would discourage settlement at the grievance stage.

And finally, it is worth noting that the result reached here does not mean that the

---

[13] Specifically, the issue before the arbitrator is whether Officer Millhouse achieved eight (8) consecutive months of disciplinary-free service before the April 2017 vacancy for a K-9 officer was posted. Even more precisely, the issue is whether Officer Millhouse's time on a performance improvement plan constituted discipline within the meaning of the Settlement Agreement.

11

ultimate resolution of the parties' dispute after arbitration is immune from federal review. On the contrary, once arbitration is completed, either party could bring suit to enforce the arbitral award. Although judicial review of arbitration proceedings is admittedly narrow,[14] the parties will nonetheless have access to federal court. Importantly, however, resort to federal court is a last resort, and is only available after completing mandatory arbitration.

## IV.

For the reasons stated in this Memorandum Opinion, the Union's claim must be submitted to arbitration. Accordingly, WMATA's motion to dismiss will be granted by separate order.

Of course the parties may appeal this decision; but it is worth noting that an appeal would further delay the resolution of this labor dispute which cries out for an expeditious resolution. To this end, the parties will be ordered to provide notice of the arbitration schedule within thirty (30) days of entry of this Memorandum Opinion and the Order to follow.

Alexandria, Virginia
August 30, 2017

T. S. Ellis, III
United States District Judge

---

[14] See MCI Constructors, LLC v. City Of Greensboro, 610 F.3d 849, 857–58 (4th Cir. 2010) ("[T]he scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.") quoting Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007)).